ARMSTRONG, Judge.
Defendants, James Riley and Que Sera, Inc., (“Que Sera”), appeal the trial court’s judgment cancelling the lease agreement they entered into with South Alabama Leasing Company, (“South Alabama”) and authorizing the Receiver for Que Sera to enter into a more attractive lease agreement with Delta Refrigeration Company, (“Delta”). For the following reasons we affirm the judgment of the trial court.
On July 1, 1984, Que Sera, (a domestic corporation, whose main business is a local restaurant), with James Riley acting as President, entered into a lease agreement for an ice machine with South Alabama. Ken Canton, a minority stockholder of Que Sera, is the president of South Alabama and acted as its agent in securing the lease. This lease was for three years at a monthly rental of $511.76 and a down payment of $1,022.52. If the contract had been paid *214 through its term, the total amount paid would be $19,445.88.
On March 28, 1985, John P. Pratt, John B. Pratt and William L. Pratt, (“the Pratts”), minority stockholders of Que Sera, filed a Petition of Intervention in the original Dupuy suit alleging, among other things, a breach of fiduciary duty by Riley in operating Que Sera. Subsequently the Pratts petitioned the court to appoint a temporary receiver for Que Sera, Inc. pending trial and for damages against, among others, Riley and Canton. The court appointed a receiver for the corporation and on October 30, 1985 the Pratts filed a “Rule Nisi for Relief In Aid of Successful Conclusion of the Receivership of Que Sera, Inc.”. In this petition they requested that the trial court cancel the lease entered into by Riley (of Que Sera) and Canton (of South Alabama). The motion also requested that the court authorize a lease for new ice machines with Delta which would be more advantageous to Que Sera. The Delta lease permits Que Sera to own the machines after two years for $2.00 and gives Que Sera a free maintenance contract for the twenty-four month period the lease is in existence. A hearing was held and the Pratts’ motion was granted.
Defendants request that the judgment of the trial court cancelling the lease with South Alabama be reversed and the corporation be made to pay for the use of the ice machines for the balance of the term with the provision that South Alabama fulfill its obligation to supply a maintenance contract and turn over ownership of the ice machines to the corporation upon Que Sera’s payment of $1.00.
Our review is governed by the standard in Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Absent manifest error the trial court’s ruling should be sustained. The transcript submitted shows that hearings were held on November 8, and 11, 1985. At the hearings, the Receiver testified that he not only wanted the new Delta ice machines because of the increased capacity, but also because they would be new and maintenance free.
Que Sera argues that there must be some real economic reasons for the Receiver to cancel existing contracts, however this is not the law. Weber v. Press of N.H. Cornay, Inc., 144 So.2d 581 (La.App. 4th Cir.1962), the case Que Sera cites for the proposition that a receiver can adopt an executory contract simply by inaction, clearly states that the Receiver has the authority to reject contracts if it is in the best interest of the corporation. Nor do we find that the Receiver adopted the contract, as in Weber. It was not an unreasonable length of time before the Receiver sought a court order to cancel the lease. The Receiver was appointed in April, 1985 and filed his Rule to Show Cause directing the Pratts to explain why payment should not be made on the South Alabama lease in November 1985, a time period of only seven months, (as compared to eighteen months in Weber, supra). Further, South Alabama was paid for the use of the ice machines from the time the Receiver was appointed through November 22, 1985 while trying to rehabilitate the corporation.
The Receiver acted in the best interest of the corporation by recommending the Delta lease. It offers the corporation the advantage of new, maintenance free equipment and increased capacity which should be both more economical and convenient since presently the corporation must purchase additional ice to meet its needs. We find no manifest error in the trial court’s judgment.
Que Sera cites two cases for the proposition that the appointment of a receiver does not destroy the obligation of a contract. Peck v. Southwestern Lumber, 59 So. 113 (La.1912), Jacob v. Roussel, 100 So. 295 (La.1924). However, those cases are distinguishable from the facts before us. In each case the plaintiff reduced their claim to money damages when the receiver chose not to adopt the contract. The plaintiffs were awarded their claims. In the instant case, defendants are contesting the Receiver’s authority to decline to adopt executory contracts. The Louisiana Supreme Court stated in Peck, supra, that by the appointment of a receiver a situation may be ere- *215 ated wherein enforcement of specific performance may become impossible; but it does not follow from this that the obligation of a contract may be destroyed.
For the foregoing reasons the judgment of the trial court is affirmed.